IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 15, 2019 Session

## STATE OF TENNESSEE v. NATHANIEL DAVID LABRECQUE

**Appeal from the Criminal Court for Davidson County**
**No. 2017-B-1443    Amanda McClendon, Judge**

_____

### No. M2018-01587-CCA-R3-CD

_____

The Defendant, Nathaniel David Labrecque, pleaded guilty to two counts of failure to yield the right of way causing serious bodily injury. *See* T.C.A. §§ 55-8-129, 55-8-197(a)(3) (2018). He received an effective sentence of six months' incarceration, and the trial court ordered the Defendant to pay restitution in the amount of $500,000. On appeal, the Defendant contends that the trial court erred by (1) ordering restitution without assessing his ability to pay and (2) ordering restitution when there was no evidence substantiating the victims' losses. We affirm the Defendant's convictions, but we reverse the trial court's restitution order and remand for entry of amended judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Case Remanded for Entry of Amended Judgments**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which Camille R. MCMULLEN, J., joined. NORMA MCGEE OGLE, J., filed an opinion concurring in part and dissenting in part.

Ryan C. Davis, Nashville, Tennessee, for the appellant, Nathaniel David Labrecque.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Ross M. Boudreaux, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case arose following a motor vehicle collision involving the Defendant and the victims, Lovell and Jacqueline Conner. The Davidson County grand jury indicted the Defendant for two counts of failure to yield the right of way resulting in serious bodily injury, one count for each victim, and one count of driving on a revoked license. On June 21, 2018, the Defendant pleaded guilty to the two counts of failure to yield, and the State

dismissed the driving on a revoked license charge. Following a sentencing hearing on August 9, 2018, the Defendant received an effective sentence of six months' incarceration and was ordered to pay $500,000 in restitution. Additionally, his driving privileges were revoked for six months.

During the Defendant's guilty plea hearing, the prosecutor stated that the proof would have established that on July 28, 2016, the Defendant was involved in a motor vehicle collision with Mr. and Ms. Conner. Ms. Conner was driving, and Mr. Conner was seated in the front passenger seat. The Defendant made a left turn and drove into the Conners' car, which had the right of way. Ms. Conner "hit the brakes" of her car but was unable to prevent the Defendant's car from colliding with hers. The Defendant's driver's license was revoked at the time. The Conners suffered serious injuries as a result of the collision.

At the sentencing hearing, Officer Jessie Meadows testified that on July 28, 2016, he responded to a motor vehicle collision involving two cars: one driven by the Defendant and one driven by Ms. Conner. Officer Meadows said that the Defendant had turned left without seeing the victims' car and hit the victims' car at an angle. Officer Meadows explained that the victims were conscious but that both were injured. Officer Meadows determined that the Defendant did not have a valid driver's license. Officer Meadows stated that the Defendant was not intoxicated and was not cited for reckless driving. Officer Meadows said that the collision was the Defendant's fault.

Lovell Conner testified that on July 28, 2016, he was a passenger in his wife's car. He said that he was age seventy-two and that, before the collision, he had enjoyed an active lifestyle with no pain or physical limitations. Mr. Conner said that they were going home from lunch when he saw the Defendant's car coming from the opposite direction in the left turn lane. Mr. Conner explained that the Defendant's car swerved out of the turn lane and collided with the victims' car. Mr. Conner did not believe that the Defendant intentionally drove into the Conners' car but said the Defendant was reckless. Mr. Conner said that he had head injuries and suffered two broken legs, which required multiple surgeries. Mr. Conner was hospitalized and later spent 100 days in rehabilitation, where he relearned to walk. Mr. Conner stated that one of his sons quit his job and moved in with the Conners to help them while they recovered from their injuries and that he paid his son's bills throughout the duration of his stay. Mr. Conner explained that he was retired and lived on a fixed income and that he and his wife had incurred at least $170,000 in medical bills. He said that he was not sure if there was any outstanding debt because Ms. Conner was responsible for their finances. He said that he would need help with physical tasks for the rest of his life and that his condition would not improve over time.

Jacqueline Conner testified that she was age sixty-eight. She said that on July 28, 2016, she was injured in a motor vehicle collision involving the Defendant. Ms. Conner explained that before the collision, she and Mr. Conner were healthy and enjoyed an active lifestyle. Ms. Conner explained that she was driving home when the Defendant's car hit her car. Ms. Conner said that she was treated for fractured vertebrae and abrasions to her chest. Ms. Conner said that she and Mr. Conner suffered financial stress because of the collision and stated that her husband's medical bills were in excess of $500,000.

The Defendant testified that he was involved in the motor vehicle collision with the Conners. He conceded that he failed to yield to oncoming traffic, causing the collision. The Defendant explained that he was not intoxicated at the time. He said that he was in a hurry, misjudged the speed of the Conners' car, and pulled out of his lane.

The Defendant testified that he had a history of difficulty maintaining full-time employment because he did not have a driver's license. The Defendant said that his first conviction for driving on a revoked license was in 2006 and that he had multiple convictions for driving on a revoked license since. He said that he had not tried to get a valid driver's license because he could not afford it. The Defendant said that he had attempted to pay fines and court costs related to his revoked license. He said it was difficult to make payments because he had trouble maintaining employment when he did not have transportation. The Defendant had been in jail for thirty days before the sentencing hearing, which made it more difficult to obtain employment. The Defendant said that, before his incarceration, he worked at a sawmill for two months. The Defendant had additional pending criminal charges. The Defendant was uncertain about when he would be able to secure full-time employment.

In determining the Defendant's sentence, the trial court stated that the victims' injuries were the worst she had seen during her twelve-year tenure as a judge. The court applied two enhancement factors based upon the Defendant's criminal history related to driving on a revoked license and upon the vulnerability of the victims given their age. The court ordered the Defendant to pay $500,000 in restitution, reasoning that the Defendant's actions were a willful disregard for "life, limb[,] and property." The court found that based on the Defendant's actions, it was foreseeable that he could injure someone. The court acknowledged that the Defendant would not be able to pay this amount while incarcerated but stated that the restitution order would convert to a civil judgment after he served his six-month sentence. This appeal followed.

The Defendant contends that the trial court improperly ordered the Defendant to pay restitution (1) because he did not have the ability to pay and (2) because the State failed to present proof of the victims' losses. The State concedes that the trial court erred in disregarding the Defendant's ability to pay the restitution. The State argues that a new hearing should be held to determine the Defendant's financial resources in order for the court to determine an appropriate restitution amount. The State argues that the

Defendant's second issue should be pretermitted because of the State's concession that the trial court improperly ordered the Defendant to pay $500,000 in restitution. The Defendant responds that a new hearing is not warranted to determine whether restitution is appropriate because the trial court has already found that the Defendant was indigent. Additionally, the Defendant argues that a new hearing is moot because the Defendant's sentence has expired and that the trial court does not have the authority to enforce any modification of restitution.

As relevant here, any person who fails to yield the right-of-way as provided in Tennessee Code Annotated section 55-8-129 and "the violation results in serious bodily injury to . . . any person shall be guilty of a [Class B] misdemeanor." T.C.A. § 55-8-197(a)(3), (c)(1). For the purposes of this statute, serious bodily injury means "substantial risk of death[,]" "serious disfigurement[,]" or "protracted loss or impairment of the function of any bodily member, organ or mental faculty." *Id.* § 55-8-197(b)(1)-(3).

A defendant convicted of a felony or misdemeanor may be ordered to pay restitution to the victim or victims in conjunction with a sentence of continuous confinement in a local jail, workhouse, or department of correction. T.C.A. § 40-35-104(a), (c)(2), (6), (8) (2014); *see id.* § 40-35-304(a) (2014). The amount is determined based on "the nature and amount of the victim's pecuniary loss." *Id.* § 40-35-304(b). "Pecuniary loss," in the context of this section, means "[a]ll special damages . . . as substantiated by evidence in the record or as agreed to by the defendant" and "[r]easonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense[.]" *Id.* § 40-35-304(e)(1)-(2). At the time of the sentencing hearing, the court shall specify "the amount and time of payment . . . to the victim and may permit payment . . . in installments." *Id.* § 40-35-304(c). The court may not establish a payment "schedule extending beyond the statutory maximum term of probation supervision that would have been imposed for the offense. T.C.A. § 40-35-304(c). "The court shall consider the financial resources and future ability of the defendant to pay" in determining restitution. *Id.* § 40-35-304(d). Moreover, "upon expiration of the time of payment or the payment schedule imposed . . . , if any portion of restitution remains unpaid, then the victim or the victim's beneficiary may convert the unpaid balance into a civil judgment[.]" *Id.* § 40-35-304(h)(1).

The record reflects, and the State concedes, that the trial court failed to consider the Defendant's financial resources and ability to pay in its restitution determination. *See State v. Comer*, 278 S.W.3d 758 (Tenn. 2008) (holding that, in determining restitution, the sentencing court must consider a defendant's financial resources and ability to pay); *see also State v. Lane*, 254 S.W.3d 349, 353 (Tenn. 2008) (holding that the failure to consider a defendant's financial ability to pay restitution was a "plain and palpable abuse of discretion[.]") The Defendant testified that he had been incarcerated for one month before the hearing, was not employed, and had not held steady employment in years. The Defendant stated that he had difficulty maintaining employment because he did not have

a valid driver's license. He also stated that he could not afford to have his driver's license reinstated. The record does not reflect that the trial court discredited this testimony. In addition, the Defendant's sworn affidavit of indigency in the record reflects that the Defendant had no vehicles, real estate, or other assets and had no income. Moreover, the trial court ordered the Defendant to serve his entire six-month sentence incarcerated, and the Defendant also faced additional pending criminal matters. The Defendant stated that given his incarceration and unresolved criminal matters, he was unsure when he would be able to obtain employment. The Defendant was determined to be indigent in September 2017. The trial court acknowledged that the Defendant would not be able to pay restitution.

The record reflects that the Defendant did not have the financial resources to pay $500,000 restitution, and his future ability to pay restitution was uncertain. A new hearing is not necessary to determine the Defendant's financial resources or future ability to pay because there was sufficient evidence at the sentencing hearing from which the trial court could have made that determination. *See State v. Keisha M. Howard*, No. E2011-00598-CCA-R3-CD, 2012 WL 3064653, at *11 (Tenn. Crim. App. July 30, 2012) (reducing the amount of restitution the defendant was required to pay after concluding that the record contained sufficient evidence to determine the victim's loss but that the record did not support the trial court's calculation of the victim's loss). The trial court did not discredit the Defendant's testimony. The trial court abused its discretion in setting restitution at $500,000 without properly considering the Defendant's financial resources and future ability to pay. Because the record reflects that the Defendant is indigent and has poor prospects of future employment, the restitution order is reversed and the case is remanded to the trial court for the entry of amended judgments reflecting no restitution.

Based upon the foregoing and the record as a whole, the trial court's restitution order is reversed, and the case is remanded for entry of amended judgments consistent with this opinion.

_____
ROBERT H. MONTGOMERY, JR., JUDGE